IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| RONALD JOE BYERS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No.: 00-PT-0628-M |
| ) | |
| NATIONAL FOUNDATION LIFE ) | |
| INSURANCE COMPANY and ) | |
| LIFESTYLES MARKETING ) | |
| GROUP INC., ) | |
| ) | |
| Defendants. ) | |

FILED
03 SEP 10 PM 3:20
U.S. DIST[...]
N.D. OF ALABAMA

ENTERED
SEP 10 2003

## MEMORANDUM OPINION

This cause comes on to be heard upon defendant Lifestyles Marketing Group Inc.'s ("Lifestyles") Renewed Motion for Summary Judgment as to Plaintiffs' Contract Claims (Doc. 56); Lifestyles' Motion for Summary Judgment as to Plaintiffs' First Amended Complaint (Doc. 49); and defendant National Foundation Life Insurance Company's ("National Foundation") Motion for Summary Judgment (Doc. 48).

### FACTS AND PROCEDURAL HISTORY[1]

National Foundation is a Delaware corporation engaged in the business of selling insurance, with its principal place of business in Texas. *See* Am. Compl. at ¶ 8. Lifestyles is a Delaware corporation in the business of marketing insurance products for insurance companies,

---

[1] This statement of facts is taken directly from the court's earlier summary judgment opinion in this case. *See* Mem. Op. of March 27, 2003. Neither side has objected to this statement of facts, and the only facts recited in connection with the present motions were included in the previous opinion. All references to "Def. Ex. __" are to the prior exhibits filed by the parties. All other references are to exhibits filed in connection with these motions.



including National Foundation. *See* Am. Compl. at ¶ 9. Lifestyles' principal place of business is also in Texas. At various times, plaintiffs[2] were agents of Lifestyles, employed to write and sell National Foundation insurance policies. *See* Am. Compl. ¶¶ 3-7; Def. Br. at 1-3. This controversy surrounds these business relationships.

According to the Request for Agent's Appointment, a copy of which was signed by each plaintiff, National Foundation had "no obligation" to pay any commissions to plaintiffs. *See* Def. Exs. B, H, K, O, P at ¶ 2. Rather, plaintiffs were to be paid a commission by Lifestyles on the initial sale of each policy, as well as an advance commission on each renewal premium to be paid during the first year of the policy. *See* Def. Exs. C, D, F, G, L, R at ¶¶ 17-18. If plaintiffs had subagents, they would also receive a commission on each policy sold by a subagent and an advance commission on each renewal premium to be paid during the first year of the policy. *Id.*

The dispute here surrounds the remaining provisions of the contracts. According to the contracts, if a policy sold by plaintiffs, or one of their subagents, was cancelled before the first year of the policy expired, Lifestyles would recoup any commissions advanced for premiums that were not paid during that first year. *Id.* at ¶¶ 10, 17, 18, 22, 23. Also, according to the contracts, plaintiffs were ultimately responsible for all debit balances of their subagents. *Id.* at ¶ 10. And finally, Lifestyles had the right to (1) recoup from plaintiffs any monies paid for the defense and settlement or disposition of legal actions involving the plaintiffs, and (2) terminate plaintiffs' appointments with or without cause, provided that fifteen (15) days notice was given. *Id.* at ¶¶ 7, 20, 23. Plaintiffs allege that the defendants made oral representations inconsistent with these

---

[2]Plaintiffs Ronald Joe Byers and Sherry Campbell are citizens of Alabama. Plaintiffs Awilda Burkes and Billy Burkes are citizens of Mississippi. Plaintiff Levon Mulkey is a citizen of Georgia. Neither side contests the court's jurisdiction under 28 U.S.C. § 1332. *See* Am. Compl. at ¶ 2; Answer to Am. Compl. at ¶ 2.

contractual provisions.

Levon Mulkey:

Plaintiff Levon Mulkey ("Mulkey") was appointed as an agent of Lifestyles in 1992. *See* Def. Ex. A at 21. Mulkey executed a Request for Agent's Appointment with National Foundation that same year. *See* Def. Ex. B. On May 31, 1995, Mulkey also executed Senior District Manager's Contracts with both Lifestyles and National Foundation. *See* Def. Exs. C & D. Mulkey started as a District Manager, but was promoted to Senior District Manager. *See* Pl. Ex. F at 29, 31. Mulkey asserts that he was told by Lifestyles that agents were not responsible for the debts of subagents. *Id.* at 24, 26-27, 62-67, 72-73, 78-82, 151; *see also* Pl. Ex. G. Mulkey's appointment with defendants was terminated on March 5, 1996. *See* Def. Ex. E. Mulkey stated in his deposition that Lifestyles stopped paying him commission checks in 1996. *See* Mulkey Depo. at 114.

Billy Burkes:

Plaintiff Billy Burkes ("Mr. Burkes") executed a District Manager's contract with Lifestyles on October 10, 1994. *See* Def. Ex. F. Also in October 1994, Mr. Burkes executed a District Manager's Contract and a Request for Agent's Appointment with National Foundation. *See* Def. Ex. G & H. On December 20, 1996, Mr. Burkes executed a General Agent's Contract with National Foundation. *See* Def. Ex. I. Mr. Burkes was promoted from Associate District Manager, to District Manager, to Senior District Manager, to Regional Vice President. *See* Pl. Ex. D at 18-20. Mr. Burkes asserts that he was told by Lifestyles that he would not be responsible for the debts of subagents. *Id.* at 33-55; 70-73, 84, 93-94; *see also* Pl. Ex. E. Mr. Burkes' appointment with defendants was terminated in 1997. *See* Def. Ex. J at 59. Burkes

3

stated that he stopped receiving commission checks in 1997. *See* Billy Burkes Depo. at 70.

Sherry Campbell:

Plaintiff Sherry Campbell ("Campbell") executed a Request for Agent's Appointment with National Foundation on May 24, 1994. *See* Def. Ex. K. Campbell also executed a Writing Agent's Contract with Lifestyles on October 4, 1994. *See* Def. Ex. L. While an agent of Lifestyles, Campbell was named as a defendant in two separate lawsuits. *See* Pl. Ex. B at 63, 67-68. In both lawsuits, it was alleged that Campbell misrepresented the terms of a policy. *Id.* As a result, Campbell received two 1099 forms charging her account for the costs of defending and settling the lawsuits. *Id.* at 47-49. However, Campbell asserts, while at Lifestyles and National Foundation meetings, she was informed that her Errors and Omissions insurance policy would pay the settlements. *Id.* at 72-75. Campbell's appointment with defendants was terminated in 1996. *See* Def. Ex. M at 42.

Awilda Burkes:

Plaintiff Awilda Burkes ("Ms. Burkes") executed a contract with Lifestyles when she was first appointed in 1993. *See* Def. Ex. N at 20-22. Also, she executed a Request for Agent's Appointment with National Foundation on October 4, 1993, and another on July 18, 1995. *See* Def. Ex. O & P. During her time at Lifestyles, Mrs. Burkes was appointed to District Manager. *See* Pl. Ex. C at 26. Ms. Burkes claims that while a District Manager, she was told by Lifestyles that there would be no chargebacks for any business written by agents that were under any manager. *Id.* at 27-28. Ms. Burkes asserts that she was given similar information at every business meeting she attended. *Id.* at 31-32. Ms. Burkes' appointment with defendants was terminated on May 9, 1997. *See* Def. Ex. Q. She stated that she stopped receiving checks

4

sometime before 1997. *See* Awilda Burkes Depo. at 14, 36.

Ronald Byers:

Plaintiff Ronald Joe Byers ("Byers") executed a Writing Agent's Contract with Lifestyles on June 29, 1995. *See* Def. Ex. R. The contract provided a vesting schedule for certain commissions, including a provision stating that after two years, certain commissions were vested for life. *Id.* at ¶ 18. Byers contends that he was terminated so that his commissions would not vest. Specifically, Byers contends that he was told by Mr. Burkes that Lifestyles informed Mr. Burkes not to let anyone else validate their contracts by being with the company for two years. *See* Pl. Ex. A. Byers was terminated on or about February 1997. *See* Pl. Ex. A.

Plaintiffs filed this lawsuit on March 10, 2000, alleging (1) tortious interference with contractual relations, (2) conspiring to commit tortious interference, (3) breach of contract, and (4) unjust enrichment. This court dismissed all claims except the breach of contract claim. *See* Order of March 27, 2003. After defendants filed their original motion for summary judgment, plaintiffs amended their complaint to include claims for fraudulent inducement and promissory estoppel. Defendants now seek summary judgment on the three remaining claims.[3]

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[3] It is unclear to the court whether or not Byers' claims have been dismissed. *See* Mem. Op. of March 27, 2003 at 5 n.2.

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Celotex*, 477 U.S. at 323. "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (quotation omitted). The non-moving party then bears the burden of pointing to specific facts demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay*, 265 F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the non-moving party, although it need not resolve all doubts in a similar fashion. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

## ARGUMENTS

**I. Renewed Motion for Summary Judgment Filed by Lifestyles (Contract Claim).**

    A. <u>Defendant's Position</u>

Lifestyles argues that the choice-of-law rules of the state in which the federal court sits are used to determine which state's law applies. *See Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1444 (11th Cir. 1991). Lifestyles also notes that "Alabama has long recognized the right of parties to an agreement to choose a particular state's law to govern an agreement." *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991). Here, Lifestyles contends, the parties expressly stated that their contracts were to be governed by Texas law. *See* Def. Exs. C, D, F, L, R at ¶ 1. Thus, Texas law would apply to any interpretation of these contracts. Plaintiffs agree that Texas law applies to the contract claims.

Lifestyles notes that plaintiffs' argument in connection with the breach of contract claims is that Lifestyles made oral promises that they would not be responsible for the debts of their subagents, and that these representations modified the written contracts. However, under Texas law, an oral promise modifying a written contract is not enforceable if the contract cannot be performed in one year. *See* Tex. Bus. & Com. Code Ann. § 26.01(b)(6) (Vernon 2002); *see also Scenic Galveston, Inc. v. Infinity Outdoor, Inc.*, 151 F. Supp. 2d 812, 817 (S.D. Tex. 2001)("[I]f the original contract was subject to the statute of frauds, any modification materially affecting the character or value of the underlying agreement would have to be in writing as well."). *See* Def. Br. at 3 (other cases). Moreover, where no time is specified, a reasonable time will be implied, considering the circumstances, situation of the parties, and the subject matter of the contract. *See Leon Ltd. v. Albuquerque Commons P'ship*, 862 S.W.2d 693, 701 (Tex. Ct. App. 1993).

Here, Lifestyles contends, there is no possible way for these contracts to be performed within one year; thus, they fall under the Statute of Frauds and an oral modification is

unenforceable.[4] According to Lifestyles, plaintiffs complain about the renewal commissions they claim are owed to them. However, these renewal commissions, by definition, would only be earned on policies after they had been in force for one year. *See* Def. Exs. C, D, F, L, R at ¶ 18.[5] Lifestyles also notes that under Texas and Alabama law, a party cannot avoid the operation of the Statute of Frauds by alleging promissory estoppel when there is a written contract in place. *See, e.g., Aldridge v. DaimlerChrysler Corp.*, 809 So.2d 785, 794 (Ala. 2001); *Barker v. Brown*, 772 S.W.2d 507, 510 (Tex. Ct. App. 1989).

Lifestyles also argues that the alleged oral promises are barred because of a lack of consideration. Lifestyles notes that under Texas law, "the modification of an existing contract must be based upon sufficient new consideration." *FCLT Loans, L.P. v. United Commerce Center, Inc.*, 76 S.W.3d 58, 60 (Tex. Ct. App. 2002). Here, there are no allegations of new consideration, nor have any allegations been supported by proper pleadings.

B. Plaintiffs' Response

In essence, plaintiffs argue that Lifestyle is simply trying to take a second bite at the apple. They note that in the original motion for summary judgment, Lifestyles addressed the breach of contract issue in a single paragraph. Now they have filed a more lengthy brief. Plaintiffs note that there has been no change in the law, nor has Lifestyles pointed to any additional facts that were not previously considered by this court. Nor does Lifestyles cite any

---

[4]Query: If either side can terminate with 15 days notice does this apply? *See Hardison v. A. H. Belo Corp.*, 247 S.W.2d 167 (Ct. of Civ. App. Texas 1952).

[5]Although not a controlling case, Lifestyles cites *Dumas v. Auto Club Ins. Ass'n*, 473 N.W.2d 652 (Mich. 1991) as a case with analogous facts and issues. *See id.* at 539 ("The agreement with regard to renewals was not capable of performance within one year because it was not possible for renewal commissions to accrue until after the first year.").

8

factual errors in this court's previous opinion. All Lifestyles is trying to do, plaintiffs argue, is get this court to reconsider its previous ruling. According to plaintiffs, the time for filing such a motion has long since passed.[6]

## II. Lifestyles' Motion as to the First Amended Complaint (Estoppel and Fraud)

### A. Defendant's Position

First, as to any fraud claim, Lifestyles notes that the statute of limitations is two years. *See* Ala. Code § 6-2-38. Lifestyles notes the tolling provision found in Ala. Code § 6-2-3, but argues that the burden is on the plaintiffs to show that they are entitled to invoke it. *See Miller v. Mobile County Bd. of Health*, 409 So. 2d 420, 422 (Ala. 1981). Lifestyles also notes that the period for filing a fraud claim "begins to run when the plaintiff, in the exercise of ordinary care, should have discovered the misrepresentation." *Haines v. Tonning*, 579 So. 2d 1308, 1310 (Ala. 1991). *See also McGowan v. Chrysler Corp.*, 631 So. 2d 842, 845 (Ala. 1993); *Fabre v. State Farm Mut. Ins. Co.*, 624 So. 2d 167, 168 (Ala. 1993). This lawsuit was not filed until March 10, 2000, and the amended complaint adding the fraud claim was not filed until July 17, 2002. All three plaintiffs[7] stated that they stopped receiving commission checks in 1996 or 1997; thus, they all three had actual knowledge that should have put them on notice of the alleged fraud more than two years before they filed this lawsuit.

Next, Lifestyles argues, plaintiffs have failed to state a claim for fraud or promissory

---

[6]Lifestyles seems to suggest that it is filing this renewal motion because it first learned of plaintiffs' "oral modification" theory when it read their response to the first motion for summary judgment. *See* Def. Br. at 2. Plaintiffs contend that Lifestyles learned of this theory earlier, *see* Pl. Br. at 3, and the court also notes that Lifestyles could have addressed the issue in its original reply brief.

[7]Lifestyles asserts that since Campbell and Byers had no subagents, they have no estoppel or fraud claim. Thus, it address only Mulkey's and the Burkes' claims.

9

estoppel. To support these claims, Lifestyles argues, plaintiffs "must prove that the defendant made an untrue statement concerning *a material existing fact." Lawson v. Cagle*, 504 So. 2d 226, 227 (Ala. 1987)(emphasis added). Here, plaintiffs merely allege that Lifestyles promised to perform an act in the future. Thus, plaintiffs have failed to state any claim of promissory estoppel or fraud.

Rather, such a claim would be for promissory fraud. Lifestyles argues that plaintiffs have not alleged a claim for promissory fraud. It also contends that plaintiffs have failed to prove promissory fraud, even assuming that such a cause of action was pled. Lifestyles notes that a plaintiff alleging promissory fraud "must prove not only falsity, reliance, and loss or damage, but also that *when the statement was made* there was an actual fraudulent intent not to perform the act promised and an intent to deceive the plaintiff." *Ballew v. Charter Realty ERA*, 603 So. 2d 877, 881 (Ala. 1992). *See also Benetton Servs. Corp. v. Benedot, Inc.*, 551 So. 2d 295, 298 (Ala. 1989). Plaintiffs have made no such allegations and have proved no such facts.

Finally, Lifestyles argues, even if plaintiffs had alleged the misrepresentation of an existing material fact, which it disputes, they cannot prove reasonable reliance upon the alleged statement. Lifestyles quotes *Torres v. State Farm Fire & Cas. Co.*, 438 So. 2d 757 (Ala. 1983), in which the court stated that

> Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiffs' reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover.

10

*Id.* at 758-59.[8] The Alabama Supreme Court has further stated that, under this standard, "the trial court can enter a judgment as a matter of law . . . where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms." *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 421 (Ala. 1997). Here, the contracts clearly stated that the plaintiffs would be liable for the debts of the sub-agents. *See, e.g.*, Def. Exs. C, D, F, G at ¶ 10. Thus, plaintiffs cannot say that they reasonably relied upon the misrepresentations.

### B. Plaintiffs' Response

Plaintiffs counter that they are entitled to the tolling provision found in Alabama Code § 6-2-3 because they were lulled into a sense of security and because they could not have discovered the fraud until Lifestyles began to contradict all previous communications with them. Plaintiffs contend that when a false representation has induced action and a sense of security, "there is no legal duty to assume an attitude of suspicion and lookout for fraud until some fact comes to plaintiff's knowledge indicating probable fraud." *Cartwright v. Braly*, 117 So. 477, 481 (1928). Furthermore, plaintiffs assert, if a party is lulled into a sense of security by misrepresentations as to the contents of a document, "the law imputes to him no knowledge of its contents." *S. Bldg. & Loan Ass'n v. Dinsmore*, 144 So. 21, 23 (1932). Here, plaintiffs contend, they had no reason to suspect that Lifestyles would not fulfill their promises until it began using the employment contracts as a shield in depositions. Those depositions were in May of 2002,

---

[8]Lifestyles also contends that the case *Pranzo v. ITEC, Inc.*, 521 So. 2d 983, 985 (Ala. 1988), adopted a "reasonable reliance" standard for promissory estoppel claims.

11

and the amended complaint was filed on July 12, 2002. Plaintiffs argue that it is a question of fact for the jury as to exactly when they should have discovered the fraud. *See Federal Sav. & Loan Ins. Co. v. Haralson*, 813 F.2d 370, 375-76 (11th Cir. 1987).

Next, plaintiffs argue, Lifestyles should be estopped from claiming that the employment contract is the only agreement between the parties. Plaintiffs cites *Bush v. Bush*, 177 So.2d 568 (1964), in which the court stated that a "promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Id.* at 570 (citation omitted). Thus, plaintiffs argue, an estoppel claim has the following elements: (1) "[t]he actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence"; (2) the "other relies upon that communication"; and (3) "the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct." *Ford v. Jackson Square, Ltd.*, 548 So. 2d 1007, 1013 (Ala. 1989)(citation omitted). Here, all three elements are present.

C. Defendant's Reply

Again, Lifestyles argues that for fraud or promissory estoppel, you must have a misrepresentation of a material, *existing*, fact, which is not present here. Nor can plaintiffs claim promissory fraud, because there is no evidence, even assuming that Lifestyles made the promise, that it had no intention of fulfilling the promise *at the time the promise was made*.[9] Also,

---

[9] In its reply, Lifestyles for the first time argues that a promissory fraud claim will also fail if the alleged promise would be void under the Statute of Frauds. *See Bruce v. Cole*, No. 1000080, 2003 WL 164596 (Ala. Jan. 24, 2003).

12

Lifestyles again contends that there was no reasonable reliance on the alleged promises, because they were clearly contrary to the written terms of the contract.

Lifestyles also addresses the statute of limitations arguments set forth by plaintiffs. Lifestyles again notes that the burden is on plaintiffs to show that the tolling provision applies to them. Lifestyles also argues that, contrary to plaintiffs arguments, knowledge of the fraud is not required. Rather, "it is knowledge of the facts that would have alerted a reasonable person to the existence of a potential fraud, and *not actual knowledge of the fraud itself*, that determines whether the question of [tolling] in a fraud case can be decided as a matter of law." *Ex parte Am. Gen. Fin., Inc.*, 795 So. 2d 685, 691 n.9 (Ala. 2000)(emphasis in original)(citation omitted). As noted above, all three plaintiffs stopped receiving commission checks no later than 1997. *See, e.g.*, Billy Burkes Depo. at 70-71 ("all of the sudden" stopped receiving commissions). Moreover, Lifestyles argues, the terms of the contracts should have alerted them to the fraud. Lifestyles notes that "fraud is discovered, as a matter of law, when one receives documents that would put one on notice that the fraud has occurred." *Fabre*, 624 So. 2d at 169. In other words, "the statute of limitations for fraud is not tolled by the failure of a person to read documents." *Parsons Steel, Inc. v. Beasley*, 522 SO. 2d 253, 256 (Ala. 1988)(citations omitted). Finally, Lifestyles notes that the original complaint, filed two years before the deposition testimony that plaintiffs rely on was taken, states that "[a]t some point, Lifestyles did not continue to abide by its representations. It began charging plaintiffs monies for the debts of their subagents. . . ." *Id.* at ¶ 15. Thus, plaintiffs were clearly on notice of the alleged fraud.

### III. Motion for Summary Judgment Filed by National Foundation

National Foundation argues that, even assuming that all of plaintiffs' allegations are true,

13

it cannot be liable because it is undisputed that it was not responsible for paying any commissions to plaintiffs. Indeed, the contracts signed by plaintiffs specifically stated that National Foundation had no such obligation. *See* Nat. Found. Exs. A-E. Plaintiffs also testified that they received checks from Lifestyles, not National Foundation. *See* Billy Burkes Depo. at 58-59; Awilda Burkes Depo. at 32; Mulkey Depo. at 38-39; Campbell Depo. at 34.

Plaintiffs have not filed a response to National Foundation's motion.

### CONCLUSIONS OF THE COURT

In a recorded conference on August 26, 2003, the plaintiffs acknowledged that the claims against defendant National Foundation Life Insurance Company should be dismissed. The remaining parties both agree that Texas law applies to the contract claims. Plaintiffs also acknowledge that if the language of the contracts applies rather than some orally modified versions, they do not have any contract claims because the written language in the contracts is plain and unambiguous.

The remaining issues thus become:

1. Are there any circumstances under Texas law when a written contract may be orally modified?

2. If the answer to 1 is "yes," what are the limitations on such oral modifications?

3. May the plaintiff(s) maintain claims for fraudulent inducement and/or promissory estoppel?

As usual, there is no certitude as to the answers to these questions. Ths court, however, must reach conclusions regardless of any uncertainty. The court will address these issues as

listed. The first two issues will be addressed solely under Texas law.[10]

1. May Written Contracts Be Orally Modified.

The following Texas cases address this issue. The court will directly quote therefrom:

    a. *Stowers v. Harper*, 376 S.W.2d 35 (Tex.Cir.App. 1964)

We will first consider the question of modification of the contract. A written contract, not required to be in writing, may be modified by a parol agreement, and thereafter the contract becomes a parol agreement in its entirety. *Purdin v. Jenkins*, Tex.Civ.App., 337 S.W.2d 418; *Maddox Motor Co. v. Ford Motor Co.*, Tex.Com.App., 23 S.W.2d 333.

. . . .

The determination of the existence of a modification of a contract will depend upon the intention of the parties, and therefore becomes a question of fact. *San Antonio Machine & Supply Co. v. Allen*, Tex.Civ.App., 268 S.W. 535.

*Id.*, at 39.

    b. *Goodyear Tire and Rubber Co., v. Portilla*, 836 S.W.2d 664 (Tex.App. 1992)

The parties may modify at-will employment by agreement, and the agreement may be either written or oral. If an employee can prove that those who were qualified to do so modified her employment-at-will status, continued employment becomes subject to the oral agreement. *Moore, 820 S.W.2d at 877; Johnson*, 690 S.W.2d at 93.

*Id., at 667-68.*

. . . .

The employee must also prove that the one who made the representations was the employer's agent and was acting within the scope of his authority. *Moore*, 820 S.W.2d at 877. Generally, when an agent acts within the scope of his apparent authority, he binds the principal as though the principal performed the action taken. *Ames v. Great Southern Bank*, 672 S.W.2d 447, 450 (Tex.1984); *Hall v. F.A. Halamicek Enters., Inc.*, 669 S.W.2d 368, 375 (Tex.App.–Corpus Christi 1984, no

---

[10]The court asked the parties to cite their best Texas cases on issues 1 and 2. The court will quote from each case cited by the parties. All footnotes are omitted.

writ).

*Id.*, at 668.

### 2. Limitations on Oral Modification

The only argument that Lifestyles has made with regard to an exception to the Texas oral modification rule discussed in 1. above, is that a contract subject to the Statute of Frauds by virtue of being incapable of performance within one year cannot be orally modified.

The following Texas cases bear on that issue:

a. *Goodyear Tire and Rubber Co. v. Portilla*, 836 S.W.2d 664 (Tex. App. 1992)

> Appellant's second point of error asserts that the Statute of Frauds, Tex.Bus. & ComCode Ann. § 2601(b)(6) (Vernon 1987), precludes creation of a proposed oral contract. If a contract can be performed within one year it is not within the Statute of Frauds. *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 775 (Tex. 1974); *Morgan*, 764 S.W.2d at 827; *McRae v. Lindale Indep. School Dist.*, 450 S.W.2d 118, 123-24 (Tex.Civ.App.–Tyler 1970, writ ref'd n.r.e.). When the agreement does not specify how long it will last, so as to be indefinite, the term of employment is not presumed to be longer than for one year, so the Statute of Frauds does not apply. *See Miller*, 517 S.W.2d at 775 (employee hired strictly at-will); *Morgan*, 764 S.W.2d at 826-27 (employee assured her job was protected); *McRae*, 450 S.W.2d at 123-24 (satisfaction contract); *Hardison*, 247 S.W.2d at 168-69 (satisfaction contract).
>
> When the agreement is to retain the employee until he retires, and the retirement will not occur within one year, the Statute has been held to apply to require a writing. In these cases, oral assurances were given that the employee would have a job until he retired, or the employee construed the assurances to mean that he would remain employed until he retired. In each case, the employee was many years from retirement age. The courts held that the contract must be in writing, as it could not be performed within one year.

*Id.*, at 669.

. . . .

> Goodyear contends that because Portilla's damages evidence at trial was calculated to retirement age, Portilla interpreted this contract to extend to her retirement, which would not occur for several years, thus barring the oral contract vis-a-vis the Statute

16

of Frauds. However, in *Hardison, supra*, 247 S.W.2d 167, the plaintiff alleged a satisfaction contract to extend for his life expectancy of 6.82 more years, praying for lost salary damages for those 6.82 years. The court held that the defendant company improperly interpreted the petition to allege a contract for life. *Id.* at 168. Rather, the court stated, "actually claimed, in short, is that the parties have entered into one of those familiar 'satisfaction' contracts...." *Id.* at 168. The court held that the Statute of Frauds did not apply to such a contract. *Id.* at 168-69. The balance of the cases cited in this opinion which address alleged oral retirement contracts were all decided upon allegations and direct evidence that the plaintiff expected a job until retirement. None of the cases looked solely to the prayer for damages to determine whether the plaintiff alleged a contract until retirement. Following *Hardison*, the only dispositive decision here, merely requesting damages for a period greater than one year will not bring a cause of action for breach of an oral employment contract under the Statute of Frauds.

The agreement Portilla made with Goodyear was for an indefinite term, not necessarily to be performed in more than one year. An oral satisfaction contract such as this one, in which Portilla does not allege that she would have her job until she retired, does not fall within, and is not barred by, the Statute of Frauds. Point of error two is overruled.

*Id.*, at 670-71.

        b. *Hall v. Hall*, 308 S.W.2d 12 (Tex. 1957)

Considering first the question of whether the contract was or was not within the purview of the statute, we find no authority in the briefs, or by our own research, that is very helpful. The basic rule is, of course, that, in order to fall within the statute, it must appear from the terms of the contract that performance cannot be completed within one year. See citations and discussion in *Chevalier v. Lane's, Inc.*, 147 Tex. 106, 213 S.W.2d 530, 6 A.L.R.2d 1045; also the strong statement of the rule in *Goodwin v. Southtex Land Sales, Inc.*, Tex.Civ.App., 243 S.W. 2d 721, 725, wr. of er. refuses, 'no reversible error'. A corollary to the foregoing is that where the term of performance is uncertain in the sense that the contract merely provides for the performance of a particular act or acts, such as the building of a house, which can conceivably be performed within one year, the statute does not apply, however improbable performance within one year may be. *Lennard v. Texarkana Lumber Co.*, 46 Tex.Civ.App. 402, 94 S.W. 383. In some cases, it is doubtless also correct to say that, if no period for performance is stated, the statute is inapplicable. See the language in *Wright v. Donaubauer*, 137 Tex. 473, 377, 154 S.W.2d 637, 639. The difficulty about the instant case is that, although admittedly no period of performance was expressly mentioned, the respondent-plaintiff has recovered on the contract as one lasting three years and has procured a jury finding that it lasted three years.

17

*Id.*, at 14-15.

. . . .

> But where the result of implying a term is in effect to extend performance beyond one year, is not the contract necessarily within the statute of frauds?

*Id.*, at 100.

. . . .

> The respondent-plaintiff, in seeking to uphold a recovery on the contract for commissions to have been earned in the third year thereof, necessarily asserts a contract with a performance term of three years. He could hardly expect to recover specific damages if the term were the merely abstract one of 'a reasonable time'.

*Id.* at 101.

  d. *Group Hosp. Servs., Inc. v. One and Two Brookriver Ctr.*, 704 S.W.2d 886 (Tex. App. 1986.

> Even if the agreement were viewed as a modification, it would be enforceable. Not every oral modification to a contract within the Statute of Frauds is barred. The critical determination is whether the modification *materially* effects the obligations in the underlying agreements. *Horner v. Bourland*, 724 F.2d 1142, 1148 (5th Cir. 1984); *Vendig v. Traylor*, 604 S.W.2d 424 (Tex.Civ.App.–Dallas (1980, writ ref'd n.r.e.). Where the character or value of the underlying agreement is unaltered, oral modifications are enforceable. *Garcia v. Karam*, 154 Tex. 240, 276 S.W.2d 255, 257 (1955).

> In the lease before us the underlying obligations are not disputed. Tenant's right of possession remains unchallenged; only the obligation of payment is in issue and the dispute only runs to a comparatively small segment of the overall obligation to pay. Landlord is to provide electricity through meter devices and Tenant is to pay for extraordinary usage. The agreement, at most, only changes the *number* of meters to be employed in computing the extraordinary electricity charge. The State of Frauds does not render this type of modification unenforceable. *Smith v. Hues*, 540 S.W.2d 485, 490-491 (Tex.Civ.App.–Houston [14th Dist.] 1975, writ ref'd n.r.e.).

*Id.*, at 890.

  e. *Niday v. Niday*, 643 S.W.2d 919 (Tex. 1982).

> While the general rule regarding performance duration is as stated in *Miller v. Riata Cadillac Co.*, *supra*, this court has also held that, where the agreement, either by its terms *or by the nature of the required acts*, cannot be completed within one year, it falls within the statute and must therefore be in writing. *Hall v. Hall*, 158 Tex. 95, 308 S.W.2d 12 (1957). That is, where an oral contract omits the performance term, duration may properly be implied from extrinsic evidence. If that evidence conclusively proves that the contract cannot be completed within one year, as is the case here, the oral contract violates the Statute of Frauds as a matter of law. *Krueger v. Young*, 406 S.W.2d 751 (Tex.Civ.App.–Eastland 1966, wirt ref'd n.r.e.).

*Id.*, at 920.

Having considered the scant law revealed by the foregoing, the court concludes that the alleged oral modifications are not effective except as to any performance which accrued prior to termination and within one year of the execution dates of the respective contracts. As to any such performance, the alleged modifications, if proven by plaintiffs by a preponderance of the evidence will be applicable. The defendants' motion as to the contract claims will be otherwise granted. Further, the defendants' motion as to the promissory estoppel and fraudulent inducement claims will be granted. There is no evidence that any alleged misrepresentations were untrue or unintended at the time allegedly made.

This the 11th day of September, 2003.

/s/ Robert B. Propst
**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**